IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

SALVADORA KATOSANG,⁣   )
          )
    Plaintiff,   )
          )
vs.         )  Case No. 06-0887-CV-W-ODS
          )
          )
ANGELA WASSON-HUNT, et al., )
          )
    Defendants.  )

ORDER AND OPINION (1) VACATING PREVIOUS DENIAL OF SUMMARY
JUDGMENT, AND (2) GRANTING DEFENDANTS SUMMARY JUDGMENT IN FULL

  The Eighth Circuit reversed this Court's denial of qualified immunity for
Defendants and remanded the case for further consideration.  The first step in the
qualified immunity analysis requires the Court to determine whether the facts, viewed in
the light most favorable to Plaintiff, establish a violation of a constitutional right.  *See
Nelson v. Shuffman*, 603 F.3d 439, 446 (8th 2010).  The Court has construed the facts
in the light most favorable to Plaintiff and determines they do not establish a violation of
a constitutional right.  The Court grants Defendants summary judgment in full.


*The Facts Construed in Plaintiff's Favor Do Not Establish Her First Amendment Right to
Free Speech Was Violated*


  Plaintiff alleges she was terminated from her job in 2001 at the Kansas City
Police Department Office of Citizen Complaints (OCC) in violation of the First
Amendment Free Speech Clause.  To succeed on her First Amendment retaliation
claim, Plaintiff must show she was terminated for speaking as a citizen on a matter of
public concern.  *Garcetti v. Ceballos*, 547 U.S. 410, 416 (2006); *Bailey v. Department of
Elementary and Secondary Educ.*, 451 F.3d 514, 518 n.2 (8th Cir. 2006).

  "Speech involves a matter of public concern when it relates to a matter of
political, social, or other community concern."  *Dahl v. Rice County, Minn.*, 621 F.3d

740, 744 (8th Cir. 2010) (citation omitted). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* (internal quotation marks and citation omitted).

> The focus is on the role the employee has assumed in advancing the particular expressions: that of a concerned public citizen, informing the public that the state institution is not properly discharging its duties, or engaged in some way in misfeasance, malfeasance or nonfeasance; or merely as an employee, concerned only with internal policies or practices which are of relevance only to the employees of that institution.

*Id.* (internal quotation marks and citation omitted).

Plaintiff's alleged statements were made to Defendant Ida Pearl Fain, the Director of OCC, and occurred immediately following Fain's 6-month evaluation of Plaintiff on September 14, 2001. In a letter dated September 16, 2001, Fain wrote Plaintiff "accused [her] of exercising discriminatory practices in [OCC]." Plaintiff "alleged that [Fain] mistreated the minorities in the office and that since she was a minority (Black) that [Fain] was also mistreating her."

Speech about racial discrimination is a matter of public concern. *See Connick v. Myers*, 461 U.S. 138, 148 n.8 (1983). But Plaintiff explained in her 2008 deposition what she meant when she accused Fain of "mistreating" minorities. Plaintiff testified certain minorities at OCC routinely arrived late to work, took long lunches, and left early from work. Plaintiff testified she thought Fain was "mistreating" these minority employees by complaining to Plaintiff about them without also complaining to Plaintiff about the white employees:

Q.     What do you mean by mistreatment?

A.     I think I had–during that conversation that we have the mistreatment that I was talking about is her complaining to me about Jimmy Fite, tell me about all the problems with Jimmy Fite and all the problem with Johnnie and I view that as mistreatment, you know, of the blacks because she never complained about Hans

and Tammy [who were both white].[1]

Fain's talking about minority employees who abuse office hours would have little to no relevance to anyone outside OCC. Plaintiff's role in accusing Fain of "mistreating" employees was not as a citizen seeking to "bring to light actual or potential wrongdoing" *see Connick v. Myers*, 461 U.S. at 148. Plaintiff maintains her statement constituted criticism of Fain in her official capacity, but the statement concerned Fain as a mere supervisor, not an official setting public policy. *Cf. Belk v. City of Eldon*, 228 F.3d 872, 879 (8th Cir. 2000) (holding employee's conversation addressed a matter of public concern "because, at its base, it was a criticism of the city administrator's conduct as a public official, not as her supervisor").

The form and context of Plaintiff's statement show she was not speaking as a citizen on a matter of public concern when she accused Fain of "mistreating" minorities. Plaintiff never spoke to anyone else about Fain's alleged "mistreatment"; in fact, during her disciplinary proceeding before the Kansas City Board of Police Commissioners on February 26, 2002, Plaintiff *denied* accusing Fain of discrimination, testifying her comments to Fain regarded only timekeeping concerns. Plaintiff argues the evidence suggests she was speaking as a citizen because she was on her own time when she spoke. But the conversation with Fain occurred *immediately* after the evaluation, indicating a closer proximity to Plaintiff's role as an employee than she acknowledges. And "[w]hile a public employee does not give up her right to free speech simply because her speech is private . . . the internal nature of [Plaintiff's] speech is a factor to be considered." *Sparr v. Ward*, 306 F.3d 589, 595 (8th Cir. 2002) (citation omitted). Plaintiff did not speak as a citizen on a matter of public concern when she accused Fain of "mistreating" minorities.

At her disciplinary proceeding before the Board, Plaintiff stated the concerns she raised to Fain "were about time, sick time, vacation time, [and] compensatory time." Plaintiff explained that during her employment Fain refused to allow her 1.5 hours of

---

[1] The Court notes no evidence was presented that the white employees also failed to comply with OCC's office hours. The Court also notes Fain is black.

compensatory time Plaintiff thought she earned. Plaintiff testified she asked Fain if she would have questioned the white employees about compensatory time the way she questioned Plaintiff. Plaintiff further testified she raised these timekeeping concerns with Fain because it was "extremely confusing to [her]," later adding, "I was confused about the way [Fain] was, you know, administrating [sic] and handling the sick time, vacation time and compensatory time . . . there was no procedure." Plaintiff asked Fain to follow the "stated policy" regarding time because otherwise "Ms. Fain gave it to you if she felt like it and if she didn't/she didn't . . . ." Notably, Plaintiff testified that during her employment she had no other differences with Fain other than the time issues.

Plaintiff's statements regarding timekeeping are personnel matters not addressing a public concern. *See Belk*, 228 F.3d at 879. But the statements provide important context for another topic Plaintiff reportedly raised in her conversation with Fain. In her 2008 deposition, Plaintiff testified she spoke with Fain about the two black employees coming in late, taking long lunches, and leaving early.[2] Plaintiff explained she "wanted to following the stated policy [on office hours] because [Fain] was misusing the taxpayer's money to pay these people that were not doing work."

Speech about the misuse of public money is a matter of public concern. *Belk*, 228 F.3d at 878. But Plaintiff also had a personal interest in her speech complaining about the other employees. At her 2002 disciplinary proceeding, Plaintiff stated she felt the minorities who abused the office hours in OCC were treated better than her in terms of time:[3]

> Dr. Daniels-Young:  But you said today you were treated differently, and I cant' tell who you say you were treated differently from?

---

[2]  This is in direct conflict with Plaintiff's 2002 testimony before the Board, where she stated she "did not bring those issues up." The Court construes this conflicting evidence in Plaintiff's favor.

[3]  The record reflects Plaintiff did not raise this concern in her conversation with Fain.

| [Plaintiff]: | If you talk about time, Johnnie and Fight [sic], they come to work when they feel like it, they don't get reprimanded. |
| --- | --- |
| Dr. Daniels-Young: | So the African Americans were treated better than you? |
| [Plaintiff]: | I would say they were if you don't show up every Monday and get paid. |

"When speech relates both to an employee's private interests as well as matters of public concern, the speech is protected if it is *primarily* motivated by public concern." *Altonen v. City of Minneapolis*, 487 F.3d 554, 559 (8th Cir. 2007) (emphasis added). The motivation for speech must be "determined by evaluating the speech's content, form, and context." *Id.*

Assuming Plaintiff's speech to Fain included the topic of the dilatory black employees in OCC, the content and context suggests Plaintiff's primary motivation was her private interest in alleviating her confusion and persuading Fain to follow OCC's stated policy on timekeeping, not to provide the public with information. Plaintiff contends her interest in informing the public is demonstrated by her voluntary testimony in 2002 before the Board, but the fact this was a termination proceeding demonstrates Plaintiff's participation was that of a former employee, not a concerned citizen. Notably, not once during the hearing did Plaintiff ever accuse Fain of wasting taxpayer money.

And when Plaintiff revealed during the proceeding that the black OCC employees were abusing the office hours, she only did so in the context of being treated differently from them at OCC. The evidence is undisputed that Plaintiff's testimony during this proceeding focused on her internal office grievance with Fain over compensatory time; any public concerns were secondary. *See Bailey*, 451 F.3d at 519 (holding plaintiff's motivation was demonstrated by testimony showing he was concerned primarily with furthering his own interests). And like Plaintiff's "mistreating" minorities accusation, the fact Plaintiff's speech occurred directly after her evaluation, was made in private, and was criticism of Fain in her role as supervisor further supports the conclusion Plaintiff was speaking as a mere employee.

Plaintiff was not speaking as a concerned citizen intent on informing the public of waste when she raised the topic of the other OCC employees with Fain. Plaintiff's speech was not protected by the First Amendment.

*Conclusion*

The Court has considered all the statements Plaintiff claims she made to Fain that allegedly led to her termination from OCC. Construing the facts in the light most favorable to Plaintiff, the Court holds none of Plaintiff's statements were made by her speaking as a citizen on a matter of public concern. Plaintiff's termination did not violate the First Amendment. The Court vacates its previous denial of summary judgment and grants summary judgment in full to Defendants.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: November 18, 2010          UNITED STATES DISTRICT COURT